UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GREGGY SORIO,<br><br>Petitioner,<br><br>v.<br><br>LAURA HERMOSILLO, Seattle Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement (ICE), et al.,<br><br>Respondents. | CASE NO. 2:25-cv-02492-TL<br><br>ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER |

This matter is before the Court on Petitioner's Emergency Application for Temporary Restraining Order (Motion for TRO). Dkt. No. 2. Having considered the motion, the Federal Respondents' response[1] (Dkt. No. 12), Petitioner's reply (Dkt. No. 19), and the relevant record, the Court DENIES the motion.

---

[1] Respondent Bruce Scott (the warden on NWIPC) has not appeared in this action.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER - 1

# I.    BACKGROUND

Petitioner Greggy Sorio is a citizen of the Philippines who is facing imminent removal from the United States and has filed a petition for writ of habeas corpus ("habeas petition") seeking release from confinement. Dkt. No. 1. Petitioner does not challenge the decision by an Immigration Judge ordering his removal to the Philippines but "seeks release from custody to permit him to attend his future doctor's appointment and receive adequate medical attention" because he "needs critical healthcare and cannot be removed from the United States in his current condition." *Id.* ¶¶ 3−4.

Petitioner also moves for a temporary restraining order ("TRO") preventing his removal from the United States "until such time that his medical conditions have stabilized and he has been deemed safe to travel by independent medical review." Dkt. No. 2 at 2.

## A.    Factual History

Petitioner entered the United States as a lawful permanent resident in 2007 but was apprehended by ICE in March 2025 following his release from criminal incarceration. *Id.* He remains detained at the Northwest ICE Processing Center ("NWIPC"). *Id.* Petitioner claims that he "vomited blood and passed blood in his stool for months before he was brought to the hospital by ICE" on October 22, 2025, where he was diagnosed with tachycardia, ulcerative colitis, and osteomyelitis. *Id.* at 3; Dkt. No. 1-1 (ICE Form I-246 and Medical Records) at 10. Petitioner suffered two amputations on his right foot due to a bone infection, lost thirty pounds in detention, he developed anemia, a kidney injury, and a severe vitamin D3 deficiency. Dkt. No. 2 at 3; Dkt. No. 1-1 at 11, 15–16. The hospital discharged Petitioner on November 12, 2025, "with eleven medications and instructions to continue wound care on his amputations and return in six weeks." Dkt. No. 2 at 3; Dkt. No. 1-1 at 14, 24–26.

1    Petitioner asserts that his condition deteriorated further upon his return to NWIPC. On

2  November 26, 2025, doctors increased his steroid dosage in response to his passing blood in

3  stool and vomiting blood, and they instructed Petitioner to return in six weeks to receive an IV

4  with medication to taper him off steroids. Dkt. No. 2 at 3. Petitioner claims that ICE medical

5  staff later tried to remove the stitches from his right foot, leaving him with open wounds for

6  which he was "denied medical tape and gauze" to protect while showering. Dkt. No. 2 at 4. "His

7  tachycardia returned, he began passing blood again, and he is currently unable to walk." *Id.*

8    On November 26, 2025, Petitioner requested that ICE stay his removal due to exceptional

9  medical need. Dkt. No. 1-1. ICE denied his request for a stay on December 6, 2025. Dkt. No. 1-2

10  (I-246 Denial Letter). ICE attempted to deport Petitioner the next day, but Philippine Airlines

11  refused to allow Petitioner to board the flight due to his medical condition. Dkt. No. 1-11

12  (Carhart Decl.) ¶¶ 4–7. ICE informed Petitioner's counsel on December 8, 2025, that Petitioner

13  would be "deported as soon as possible." Id. ¶ 8.

14  **B.    Procedural History**

15    On December 8, 2025, Petitioner filed his habeas petition (Dkt. No. 1) along with two

16  motions: a Motion for Order to Show Cause ("OSC"), asking the Court to enter a briefing

17  schedule and order a return from Respondents (Dkt. No. 3), and the Motion for TRO now before

18  the Court. With the instant motion, Petitioner requests a TRO staying deportation and allowing

19  him to "seek adequate medical care and stabilize his health before executing his removal order."

20  Dkt. No. 2 at 9.

21    Within hours of the filing of the Motion for TRO, the Honorable Tiffany M. Cartwright,

22  United States District Judge, issued a provisional TRO "to preserve the Court's jurisdiction and

23  to maintain the status quo." Dkt. No. 6 ("Provisional TRO") at 3. The Provisional TRO also

24  directed Petitioner to immediately serve his petition, the Motion for TRO, and the Provisional

1  TRO on Respondents and to meet and confer with Respondents on (1) a briefing schedule for the

2  motion for TRO and (2) whether the Government will agree to a stipulated order to not remove

3  Petitioner from the United States and not to transfer Petitioner to another facility during the

4  pendency of this action. *Id.* at 3–4. If the parties could reach agreement, they were directed to file

5  a stipulated proposed briefing schedule for the Motion for TRO. *Id.* at 4.

6        On December 9, 2025, the Court granted Petitioner's Motion for OSC and entered a

7  briefing schedule for the habeas petition. Dkt. No. 9. On December 10, 2025, the Parties filed a

8  stipulated motion with a proposed briefing schedule for the Motion for TRO and a proposed

9  expedited briefing schedule for the habeas petition. Dkt. No. 10. The motion also informed the

10  Court, "Federal Respondents agree to not remove Petitioner from the United States or transfer

11  him to another facility during the pendency of this litigation before this Court." *Id.* at 2. On

12  December 11, 2025, the Court entered an order adopting the stipulated briefing schedule and

13  ordering that "Federal Respondents shall not remove Petitioner from the United States or transfer

14  him to another facility during the pendency of this litigation before this Court." Dkt. No. 11 at 4.

15        The Motion for TRO is now fully briefed and ripe for consideration.

16                          **II.    LEGAL STANDARD**

17        "A TRO, as with any preliminary injunctive relief, is an extraordinary remedy that is

18  'never awarded as of right.'" *Kovalenko v. Epik Holdings*, No. C22-1578, 2022 WL 16737471,

19  at *2 (W.D. Wash. Nov. 7, 2022) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24

20  (2008)). The standards that govern TROs are "substantially similar" to those that govern

21  preliminary injunctions. *Holthouse v. Wash. Dep't of Corr.*, No. C25-5257, 2025 WL 1167659,

22  at *1 (W.D. Wash. Apr. 22, 2025) (citing *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th

23  Cir. 2017)). "To obtain a preliminary injunction, a plaintiff must establish: (1) a likelihood of

24  success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief,

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER - 4

1 (3) that the balance of equities favors the plaintiff, and (4) that an injunction is in the public

2 interest." *Id.* (quoting *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022) (en banc)).

3 This test, arising from *Winter*, 555 U.S. 7, requires that the movant establish each element. *See*

4 *id.* Additionally, under Ninth Circuit precedent, "'a preliminary injunction is appropriate when a

5 plaintiff demonstrates that serious questions going to the merits were raised and the balance of

6 hardships tips sharply in the plaintiff's favor,' provided the plaintiff also demonstrates that

7 irreparable harm is likely and that the injunction is in the public interest." *Christopher Cooper v.*

8 *Wells Fargo Fin. Wash. 1, Inc.*, C14-1977, 2015 WL 263540, at *2 (W.D. Wash. Jan. 21, 2015)

9 (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)).

10       "Granting injunctive relief is 'an act of equitable discretion' on the part of the District

11 Court." *BitTitan, Inc. v. SkyKick, Inc.*, No. C15-754, 2015 WL 5081130, at *2 (W.D. Wash. Aug.

12 27, 2015) (quoting *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). "As such, no

13 one factor is necessarily dispositive, but 'the absence of an adequate showing with regard to any

14 one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify

15 denying the motion.'" *Id.* (quoting *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908

16 F.2d 951, 953 (Fed. Cir. 1990)).

17                              **III.    DISCUSSION**

18       As a preliminary matter, the Court finds it necessary to remind the Parties of the relief

19 Petitioner *actually* seeks in his Motion for TRO, variously described as "a Temporary

20 Restraining Order to permit him to attend his future doctor's appointment and receive adequate

21 medical attention that will allow his medical conditions to stabilize prior to his travel home to the

22 Philippines" (Dkt. No. 2 at 1), "a temporary restraining order preventing [Petitioner's] removal

23 from the United States until such time that his medical conditions have stabilized and he has

24 been deemed safe to travel by independent medical review" (*id.* at 2), "temporary restraining

1    order in response to Petitioner's imminent deportation" (*id.* at 4), and "temporary injunctive

2    relief . . . enjoining [Respondents] from effecting the removal of Petitioner and allowing him the

3    opportunity to seek adequate medical care and stabilize his health before executing his removal

4    order" (*id.* at 9). The motion does **not** seek Petitioner's immediate release from detention. *See*

5    *generally id.*; *see also* Dkt. No. 2-1 (Proposed Order).[2] Despite extensive argument from both

6    Petitioner and the Federal Respondents on the topic of Petitioner's immediate release (*see*

7    *generally* Dkt. Nos. 12, 19), **Petitioner's release from detention is not before the Court**, and

8    will not be until the habeas petition is ripe.[3]

9        As for the true object of Petitioner's Motion for TRO (*i.e.* an order preventing

10   Respondents from removing him), the Court agrees with Respondents that the "issue of removal

11   is no longer an issue to be decided on an emergency basis" in light of changed circumstances

12   since the Motion for TRO was originally filed. Dkt. No. 12 at 6.

13   > ICE agreed not to remove Petitioner from the United States or
     > transfer him to another facility during the pendency of this litigation
14   > before this Court. Dkt. No. 10. This Court included this stipulated
     > provision in its Order. Dkt. No. 11. As a result, there is no imminent
15   > risk of Petitioner's transfer or removal. Thus, the issue of his
     > removal beyond this litigation would be more appropriately
16   > addressed in the Court's decision on the habeas petition.

17   *Id.* Petitioner does not respond to this argument, nor does he explain why the extraordinary

18   remedy of *preliminary* relief is necessary to prevent irreparable harm now that Respondents have

---

19   [2] While the Motion for TRO does synthesize some (irrelevant) case law regarding the *Mapp* factors delineating a court's authority to order a petitioner's release pending adjudication of a habeas petition (*see* Dkt. No. 2 at 5–6

20   (citing *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001)), it does not apply the *Mapp* factors to Petitioner's case and does not at any time request the Court to order Petitioner's release before the adjudication of the habeas petition.

21   [3] Federal Respondents, while acknowledging that "Petitioner does not explicitly ask to be released from detention as part of the Motion," assert that Petitioner's "request to 'seek adequate medical care' implies that he is seeking

22   release as his Motion is based on his claim that medical care at the NWIPC is inadequate," (Dkt. No. 12 at 6 n.2), and argue against injunctive relief ordering Petitioner's release in addition to the injunctive relief he actually requests (*see, e.g.*, *id.* at 21–23). In his reply, Petitioner mischaracterizes his own motion: "Mr. Sorio's request for a

23   temporary restraining order is twofold: (1) it asks the Court to enjoin Petitioner's removal; and (2) release him to seek adequate medical care and stabilize his health before his removal order is executed." Dkt. No. 19 at 1. The Court will not consider a request for injunctive relieve raised for the first time in a movant's reply—even where the

24   non-movants have preemptively taken an opportunity to be heard on the issue out of an abundance of caution.

agreed not to remove him from the United States before his habeas petition is adjudicated. In his

original motion, Petitioner warns that "[h]is deportation interferes with access to medical care

and the medical professionals that have been treating him over the past almost two months,"

suggesting a desire to maintain the status quo until his petition is adjudicated (and suggesting,

also, that, if not removed, Petitioner is at least likely to be able to continue his current treatment).

Furthermore, Petitioner does not provide facts or argument substantiating other immediate harms

to his continued treatment that can only be avoided with a preliminary emergency injunction—

for example, any upcoming appointments that Respondents are likely to prevent him from

attending, or a future likelihood that NWIPC personnel will prevent Petitioner from complying

with his physician's orders, *before* the habeas petition is adjudicated. Without such information,

the Court cannot find that preliminary emergency injunctive relief is appropriate at this juncture.

However, if facts emerge that there is a non-speculative danger that Respondents will prevent

Petitioner from accessing adequate medical care in the absence of preliminary relief, the Court

will consider a renewed motion at such time.

Given Federal Respondents' stipulation that they will provide Petitioner with the specific

remedy he seeks in his Motion for TRO—i.e., they will not remove him from the United

States—until such time as the Court adjudicates the habeas petition on the merits, along with the

Court's Order that they not do so, the Court does not find it necessary to take the extraordinary

step of ordering injunctive relief before this case is adjudicated. Federal Respondents are bound

by their own stipulation and this Court's Order. While Respondent Scott (the warden on

NWIPC) has not appeared in this case and is not a party to the stipulation, the Court has no basis

to find there is any danger that Respondent Scott, the warden of NWIPC, will independently

remove Petitioner from the United States.

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER - 7

1    Therefore, Petitioner has not demonstrated that, under present circumstances, there is a

2  continued need for any relief requested in his Motion for TRO.

3                                    **IV.    CONCLUSION**

4    Accordingly, Petitioner's Emergency Application for Temporary Restraining Order (Dkt.

5  No. 2) is DENIED WITH LEAVE TO REFILE if Respondents prevent or indicate they will prevent

6  Petitioner from receiving adequate medical care, accessing his treating physicians, or complying

7  with the instructions of his treating physicians.

8    Dated this 18th day of December, 2025.

9

10

11
                                    _____
                                    Tana Lin
                                    United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER - 8