UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GREGGY SORIO,<br><br>Petitioner,<br><br>v.<br><br>LAURA HERMOSILLO, Seattle Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement (ICE), et al.,<br><br>Respondents. | CASE NO. 2:25-cv-02492-TL-BAT<br><br>ORDER ON PETITIONER'S MOTION FOR ATTORNEYS' FEES AND COSTS |

This matter is before the Court on Petitioner Greggy Sorio's motion for attorney fees and costs.[1] Dkt. No. 34. Having considered Petitioner's motion, Petitioner's declaration of net worth and fee assignment (Dkt. No. 38 (Sorio Decl.)), Petitioner's counsel's declarations, which include their timekeeping records (Dkt. No. 35 (Carhart Decl.), Dkt. No. 37 (Sueoka Decl.), Dkt. No. 40 (Jacobsen Decl.)), Respondents' response (Dkt. No. 41), Petitioner's reply (Dkt. No. 42), and the relevant record, the Court GRANTS Petitioner's motion.

[1] While Petitioner seeks fees and costs, no costs are included in the documentation or request.

## I. Background

Petitioner obtained habeas relief declaring that Respondents' unreasonable treatment of him constituted deprivations so excessive that they took Respondents' detention of Petitioner out of the realm of constitutional civil detention and rendered it punitive. *See* Dkt. No. 25 (Order on Writ of Habeas Corpus ("Order")) at 21. The Court further held that having been subject to punitive detention without due process of law, Petitioner was in custody in violation of the Constitution of the United States. *Id.* at 22. Petitioner now seeks attorney fees related to this litigation under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Dkt. No. 34.

## II. Legal Standard

The purpose of the EAJA is "to diminish the deterrent effect of seeking review of, or defending against[,] governmental action because of the expense involved in securing the vindication of rights." *Forest Conservation Council v. Devlin*, 994 F.2d 709, 712 (9th Cir. 1993) (citation modified); *accord* EAJA, Pub. L. No. 96–481, § 202(c)(1), 94 Stat. 2321 (1980) ("It is the purpose of this title . . . to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees . . . against the United States[.]"). Therefore, "in an action brought by or against the United States, a court must award fees and expenses to a prevailing non-government party 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'" *Medina Tovar v. Zuchowski*, 41 F.4th 1085, 1089 (9th Cir. 2022) (quoting 28 U.S.C. § 2412(d)(1)(A)). "For the court to award attorney's fees and costs pursuant to the EAJA, it must be shown that (1) the [petitioner] is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable." *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The attorney hourly-fee award shall not exceed $125 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Based on the limited availability of qualified attorneys under the EAJA, courts may award market rates when the attorneys possess (1) "distinctive knowledge and specialized skill" that was (2) "needful to the litigation in question" and (3) "not available elsewhere at the statutory rate." *Nadarajah v. Holder*, 569 F.3d 906, 912 (9th Cir. 2009) (citation modified).

When a court rules on a motion for attorney fees, under Federal Rule of Civil Procedure 54(d)(2)(C), the court "must find the facts and state its conclusions of law as provided in Rule 52(a)," meaning "the court must find the facts specially and state its conclusions of law separately," Fed. R. Civ. P. 52(a)(1).

## III. Findings of Fact

Given the very detailed and extensive facts in this case, the Court adopts in its entirety the Background section of the Order (Dkt. No. 25 at 2–10) but will give a brief summary here.

Petitioner is a citizen of the Philippines who was admitted into the United States in 2007 as a lawful permanent resident. Dkt. No. 14 (Melendez Diaz Decl. and Exhibits) ¶¶ 4–5. Petitioner was apprehended by ICE in February 2025 following his release from criminal incarceration and transferred to the Northwest ICE Processing Center ("NWIPC") shortly thereafter. *Id.* ¶¶ 8, 10.

Petitioner was in good health when he entered ICE detention. *See* Dkt. No. 1-9 (DHS Form I-213) at 2 ("The subject claims good health"). Eight months later, hospital records show that Petitioner's health had declined to include two partial foot amputations, a diagnosis of

ulcerative colitis (a type of inflammatory bowel disease ("IBD")),[2] acute blood loss anemia, a kidney injury, a severe vitamin D deficiency, and dramatic unintended weight loss. Dkt. No. 16 at 3. Petitioner's ulcerative colitis will be a lifelong condition, putting him at increased risk of colon cancer. Dkt. 17 ¶ 4.

Following his ulcerative colitis diagnosis and amputations, and while Petitioner's health continued to worsen, Respondents attempted to remove him to the Philippines. Dkt. 23 ¶ 6; Dkt. 22 at 6. Respondents attempted this removal despite receiving an email on December 3, 2025, from a representative of the Philippine Consulate expressing concern that Petitioner be able to recover before his removal and requesting that his travel documents not be finalized until after his pending stay of removal request was adjudicated. Dkt. No. 14 at 10–11 (Consulate–ERO correspondence). On December 6, 2025, ICE denied the stay of removal request. Dkt. No. 1-2 (ICE denial letter). The next day, ICE attempted to deport Petitioner; however, Philippine Airlines refused to allow Petitioner to board the flight due to his medical condition. Dkt. No. 1-11 (First Carhart Decl.) ¶¶ 4–7.

On December 8, Petitioner filed a habeas corpus petition, arguing that the conditions of his confinement had become unconstitutionally punitive and requesting immediate release from ICE custody. Dkt. No. 1. At the same time, Petitioner filed a temporary restraining order (Dkt. No. 2) which the Court provisionally granted in order to maintain the status quo (Dkt. No. 6).

In responding to the petition, Respondents acknowledged that "the Supreme Court has left open the question of whether there are circumstances when a challenge to the conditions of

---

[2] Inflammatory bowel disease, also called IBD, is an umbrella term for a group of conditions that cause swelling and inflammation of the tissues in the digestive tract. Ulcerative colitis, one of the most common types of IBD, involves inflammation and ulcers along the lining of the colon and rectum. Symptoms usually include belly pain, diarrhea, rectal bleeding, extreme tiredness and weight loss. Ulcerative colitis can lead to disability and life-threatening complications. *Inflammatory Bowel Disease (IBD)*, Mayo Clinic (Dec 18, 2024), https://www.mayoclinic.org /diseases-conditions/inflammatory-bowel-disease/symptoms-causes/syc-20353315 [https://perma.cc/AR75-7BMD].

confinement is properly brought in a habeas petition . . . ." Dkt. No. 22 at 15 (citing *Ziglar v. Abbasi*, 582 U.S. 120, 144–45 (2017)). Respondents largely did not address the conditions of Petitioner's confinement, arguing instead that "the medical care [Petitioner] has received is constitutionally adequate." *Id.* at 15. Beyond this, Respondents veered away from defending the conditions of IHCS's medical treatment and limited their argument to the fact and length of Petitioner's detention: "Petitioner's continued immigration detention after he has been subject to a final order of removal, and is still within the INA's removal period, cannot be described as punitive or excessive in relation to the legitimate governmental purpose of protecting the public and enforcing U.S. immigration laws." *Id.* at 20. But the Court found the record here compelled a finding that Petitioner's medical care, and denial of medical care, included objectively unreasonable failures of care that more likely than not resulted in permanent disability, including the loss of his toe and part of his foot. Dkt. No. 25 at 17–19. On February 13, 2026, the Court granted Petitioner's petition and held that he had been subject to punitive detention for which he had not been given due process of law, and that his detention therefore violated the Constitution of the United States. *Id.* at 22.

On April 14, 2026, Respondents filed a notice of appeal with the Ninth Circuit Court of Appeals. Dkt. No. 31. Respondents voluntarily dismissed their appeal on June 3, 2026. Dkt. No. 33.

Petitioner now seeks an award of $23,370.32 in attorney fees and costs under the EAJA.[3] Dkt. No. 42 at 6. Petitioner's counsel spent a total of 90.5 hours on the matter (89.1 hours related to the petition and the motion for attorney fees plus 1.4 hours for the reply to the motion for attorney fees). Dkt. No. 35 at 7, Dkt. No. 37 at 9, Dkt. No. 40 at 7, Dkt. No. 42 at 6. Petitioner

[3] While Petitioner asks for fees and costs, no costs are included in the documentation or request.

seeks attorney fees at the rate of $258.46 per hour. Dkt. No. 34 at 11. In the Ninth Circuit, the applicable statutory EAJA rate, adjusted for inflation, is $258.46 for work performed in 2025. Dkt. No. 35 at 4, Dkt. No. 37 at 5, and Dkt. No. 40 at 4; *see also* United States Courts for the Ninth Circuit, *Statutory Maximum Rates Under the Equal Access to Justice Act*, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ [https://perma.cc/RHB7-TA4G]. Petitioner declares that he retained counsel to represent him pro bono on the case, authorizes the recovery of fees and expenses to his attorney for work done but not compensated, and assigns payment of any award and fees to his attorney. Dkt. No. 38 ¶¶ 4–6.

Respondents oppose Petitioner's motion for fees and costs. Dkt. No. 41. Respondents do not dispute that Petitioner is a prevailing party. *Id.* at 3. While Respondents do not concede that their position was not substantially justified, for the purpose of this motion, they do not raise a substantial justification defense to the request for fees. *Id.* However, Respondents assert that the United States is immune from an award of attorney fees in an immigration habeas action. *Id.*

In addition, Respondents argue that Petitioner's request should be reduced for 2.7 hours of improperly billed clerical work by Peyton Jacobsen (0.6 hours at an attorney rate for filing documents on December 8, 2025) and Sam Sueoka (2.1 hours at an attorney rate for filing documents and related activities on 12/8/25, 12/13/25, 12/16/25, and 3/13/26). *Id.* at 8. While the Court agrees that Ms. Jacobsen spent 0.6 hours on filing documents, the total hours on the designated dates that Mr. Sueoka spent on filing documents only add up to 1.9 hours, not 2.1 hours. *See* Dkt. No. 37 at 7–8.

Petitioner does not dispute that the 2.7 hours (2.5 hours adjusted for Respondents' mathematical error) are clerical tasks. Dkt. No. 42 at 5. However, Petitioner asserts that because his counsel do not employ any paralegals and needed to perform the clerical tasks, they should be allowed at the market rate for paralegals, which Petitioner argues is $225–$250 per hour, with

$250 being appropriate in the present matter. *Id.* at 5–6 (first citing *Hill v. Continuum Glob. Sols., LLC*, No. C12-717, 2026 WL 592270, at *3 (W.D. Wash. Mar. 3, 2026)[4] ($250 hourly paralegal rate); then citing *Human Rights Def. Ctr. v. Pacific County*, No. C24-6068, 2025 WL 3294990, at *7 (W.D. Wash. Nov. 26, 2025) ($225 hourly paralegal rate); and then citing *Cymbidium Restoration Tr. v. Am. Homeowner Preservation Tr.*, No. C24-25, 2025 WL 2592252, at *1 (W.D. Wash. Sept. 8, 2025) ($235 hourly paralegal rate)).

## IV. Conclusions of Law

### A. Petitioner Is the Prevailing Party

Respondents do not dispute that Petitioner was the prevailing party. Dkt. No. 41 at 3. The Court finds that Petitioner was the prevailing party.

### B. Respondents' Position Was Not Substantially Justified[5]

The government has the burden of showing that its position was substantially justified. *Medina Tovar*, 41 F.4th at 1089. To determine whether the government has met its burden to show that its action was substantially justified, courts examine both the underlying agency action giving rise to the civil action and the government's litigation position. *Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013). The first question "by definition concern[s] only the merits of th[e government] action." *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988). The second question "encompass[es] the first inquiry to the extent that the government chooses to defend the merits of the challenged action[ but] must also focus upon extraneous circumstances bearing upon the reasonableness of the government's decision to" litigate the case. *Id.* The government bears the burden of demonstrating substantial justification by showing it had "a reasonable basis both in law and fact." *Flores v. Shalala*, 49 F.3d 562, 569–70 (9th Cir. 1995) (quoting *Pierce*, 487 U.S.

---

[4] The Court will refer to this case as *Continuum* to avoid confusion with *In re Hill*.

[5] Respondents do not argue that any special circumstances make an award unjust. *See generally* Dkt. No 27.

at 565)). "[E]xtraneous circumstances bearing upon the reasonableness of the government's decision" include "relevant legal or factual precedents." *Medina Tovar*, 41 F.4th at 1090 (quoting *Or. Nat. Res. Council v. Madigan*, 980 F.2d 1330, 1332 (9th Cir. 1992)). Put differently, to prove that its position was substantially justified, the government must show that the position was "justified to a degree that could satisfy a reasonable person." *Meier*, 727 F.3d at 870 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Determining whether the government's position was substantially justified is within the discretion of the district court. *See id.* at 869.

For the purpose of responding to this motion, Respondents do not contend that their position was substantially justified. Dkt. No. 41 at 3.

"The Supreme Court held more than a century ago that civil detention of a removeable noncitizen violates the Constitution if it is punitive." *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1078 (N.D. Cal. 2024) (citing *Wong Wing v. United States*, 163 U.S. 228, 237–38 (1896)). Before punishment can be imposed, the Fifth and Sixth Amendments to the United States Constitution together require the opportunity for trial by jury with specific procedural protections. *See Wong Wing*, 163 U.S. at 233–34. A civil detainee, even a noncitizen with a final order of removal, has not been afforded a trial or any of the attendant procedural safeguards. *See id.* Respondents' legal argument related to punitive detention completely ignored the issue of whether Petitioner's conditions were excessive in relation to a legitimate non-punitive purpose served by his detention. Respondents evaded any legal analysis whatsoever to justify Petitioner's conditions of confinement, instead focusing simply on the length of Petitioner's detention. Dkt. No. 22 at 20. The government has therefore failed to bear its burden of demonstrating substantial justification by showing the underlying agency action had a reasonable basis in law.

Relatedly, Respondents' litigation position in opposing the habeas petition and defending the underlying agency action lacked a reasonable basis in fact, and the Court found that the

government was responsible for "objectively unreasonable failures of care[.]" Dkt. No. 25 at 17. In litigation, Respondents broadly defended the care given by their medical providers (while sidestepping discussion of any specific actions), arguing generally that "the medical care [Petitioner] has received is constitutionally adequate." *Id.* at 15. In light of the undisputed facts presented to the court, this argument bordered on the frivolous. *See* Dkt. No. 25 at 17–19. Therefore, government failed to bear its burden of demonstrating substantial justification by showing it had a reasonable basis in fact. As such, Respondents' position was not substantially justified.

**C. The United States Is Not Immune from Attorney Fees**

Respondents argue that the United States is immune from attorney fees in this action. Dkt. No. 41 at 3–7. They assert that the EAJA applies "only to 'any civil action (other than cases sounding in tort).'" *Id.* at 4. While conceding that "habeas petitions are often categorized as civil for general purposes" (*id.*), they argue that for purposes of the EAJA "there is no meaningful difference between the habeas petition challenging criminal confinement and the habeas petition challenging immigration detention here." *Id.* at 5. Respondents further argue the Court should adopt the reasoning of the Fourth Circuit in *Obando-Seguro v. Garland*, 999 F.3d 190 (4th Cir. 2021) and the Fifth Circuit in *Barco v. Witte*, 65 F.4th 782 (5th Cir. 2023) and find that habeas petitions challenging immigration detention are not unambiguously "civil actions" under the EAJA. Dkt. No. 41 at 5–6. The Court declines to do so.

The EAJA limits recovery by a party that prevails against the United States to an award of attorney fees and expenses "incurred by that party in any civil action (other than cases sounding in tort)." 28 U.S.C. § 2412(d)(1)(A). The Supreme Court has found that habeas corpus proceedings are "technically 'civil'" in general, *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971), and the Ninth Circuit has held that EAJA fees are available in the context of some

immigration habeas actions. *In re Hill*, 775 F.2d 1037, 1040–41 (9th Cir. 1985). Further, the Third Circuit in *Michelin v. Warden*, 169 F.4th 418 (3d Cir. 2026), *reh'g en banc denied*, 169 F.4th 160 (3d Cir. 2026), and the Tenth Circuit in *Daley v. Ceja*, 158 F.4th 1152 (10th Cir. 2025), recently held that the EAJA "unambiguously" encompasses habeas challenges to immigration detention and found that such proceedings qualify as "civil actions" so that prevailing petitioners are eligible for an award of fees. *See Michelin*, 169 F.4th at 423–25; *Daley*, 158 F.4th at 1162. Both courts relied, in part, on the EAJA's use of the phrase "*any* civil action (other than cases sounding in tort)" as the qualifying language entitling a prevailing party to seek an award of fees. 28 U.S.C. § 2412(d)(1)(A) (emphasis added); *see Michelin*, 169 F.4th at 428–29; *Daley*, 158 F.4th at 1157, 1162. Given this split in the circuits, the Supreme Court will consider this issue next term. *Palacios v. Liggins*, No. 25-1223, 2026 WL 1855057 (U.S. June 29, 2026) (granting certiorari). *See infra* Section V.

As the Supreme Court in *Schlanger* characterizes habeas corpus proceedings as "technically 'civil'" actions and the plain text of EAJA states that it applies to "any" civil action "other than cases sounding in tort," this Court agrees with the Third and Tenth Circuit's interpretation that the EAJA unambiguously includes habeas proceedings challenging immigration detention. A number of courts in this Circuit and elsewhere have similarly held that immigration habeas petitions are civil actions for purposes of fee awards under the EAJA. *See, e.g.*, *Veronica V.O. v. Noem*, No. C25-1796, 2026 WL 2169089, at *2 (E.D. Cal. July 28, 2026) ("agree[ing] with the Third and Tenth Circuit's interpretation that the EAJA unambiguously includes habeas proceedings challenging immigration detention"); *Gurjinder S. v. Warden*, No. C26-188, 2026 WL 2110865, at *2 (E.D. Cal. July 22, 2026) ("Courts in this district have held that habeas petitions are civil actions for purposes of fee awards under the EAJA."); *S.F. v. Bostock*, No. C25-1084, 2026 WL 1230044, at *3 (D. Or. May 5, 2026) ("The plain text of the

EAJA, as well as the substance of Petitioner's remedy, establish that this [immigration habeas] case is a 'civil action' under the EAJA."); *Krajekian v. Cantu*, No. C25-2666, 2026 WL 598226, at *3 (D. Ariz. Jan. 2, 2026) ("EAJA fees may be awarded in cases involving a petition seeking a writ of habeas corpus pursuant to § 2241."), *report and recommendation adopted*, 2026 WL 596300 (Mar. 3, 2026).

*   *   *

Accordingly, the Court finds that Petitioner is the prevailing party in a civil action, the government's position was not substantially justified, the EAJA applies to this action, and the government is not immune from a fee award. 28 U.S.C. § 2412(d)(1)(A).

**D. The Requested Attorney Fees Are Reasonable**

Almost all of the fees sought by Petitioner are reasonable and in compliance with the EAJA. *See id.* § 2412(d)(1)(B), (2)(A).

**1. Attorney Tasks**

First, the Court finds the number of hours expended by counsel reasonable given the issues in this case and the need to delve into extensive medical records and consult with medical practitioners about those records.

Second, the Court finds that the requested hourly rate of $258.46 per hour for attorney tasks reflects the applicable statutory rate, adjusted for inflation, for work performed in 2025. *See* United States Courts for the Ninth Circuit, *Statutory Maximum Rates Under the Equal Access to Justice Act*, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ [https://perma.cc/RHB7-TA4G].[6] The Court finds that the hourly rate should be adjusted for an increase in the cost of living, and that the increased hourly rate is reasonable for this single-petitioner case and the issues involved in it.

[6] 2026 rates have not been posted.

**2. Clerical Tasks**

Respondents dispute 2.7 (corrected to 2.5) hours of attorney time for clerical tasks. Dkt. No. 41 at 7–8. Petitioner concedes the tasks were clerical but requests to be able to recover fees at the paralegal rate for the tasks. Dkt. No. 42 at 6. The Supreme Court noted in *Missouri v. Jenkins,* 491 U.S. 274 (1989), that "purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them . . . [The] dollar value [of such non-legal work] is not enhanced just because a lawyer does it." *Id.* at 288 n.10 (citation modified). However, "[s]uch non-legal work may command a lesser rate." *Id.*

As to rates for paralegals or other support staff, the EAJA provides that

> [t]he amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A). As the EAJA specifically includes specific additional requirements for exceptions to the default prevailing market rate for rates paid to expert witnesses and attorneys, rates for other service providers such as paralegals (and, therefore, legal assistants) are to be compensated at the prevailing market rate. *See Richlin Sec. Serv. v. Chertoff,* 553 U.S. 571, 579–81 (2008) (under EAJA, paralegal fees may be awarded at prevailing market rates); *Nadarajah*, 569 F.3d at 918.

However, the Court finds the hourly rate of $250 for clerical work requested by Petitioner is unreasonable. Petitioner bases the requested rate on the prevailing hourly market rates for paralegals. Dkt. No. 42 at 6. He cites cases in which the hourly rate was based on the following: $250 per hour for paralegals with eleven to twenty-four years' experience, *see* Marshall

Declaration at 13, *Continuum*, No. C12-717 (Oct. 13, 2025), Dkt. No. 278; $235 per hour for a senior litigation paralegal, *see Cymbidium Restoration Tr.*, 2025 WL 2592252, at *1; and $225 per hour for a paralegal who had previously owned a paralegal business and ran a nonprofit corporation and another who had over twenty years' experience, *see Human Rights Def. Ctr.*, 2025 WL 3294990, at *6–7. Dkt. No. 42 at 6. For reasons already discussed, while non-legal work may be compensated, the paralegal rate is unreasonable for clerical work. *Jenkins,* 491 U.S. at 288 n.10. However, in the *Continuum* case cited by Petitioner, the court approved a rate of $150 to $200 per hour for three legal assistants (the $200 per hour rate was for legal assistants with 20 to 28 years legal experience). *Continuum*, 2026 WL 592270, at *3; Marshall Declaration at 13, *Continuum*, No. C12-717 (Oct. 13, 2025), Dkt. No. 278. Given that the clerical work here—the filing of documents—could be performed by entry-level legal assistants, the Court finds that a rate of $125 per hour is reasonable.

The Court therefore AWARDS Petitioner $23,137.06 in attorney fees. This amount reflects the Court awarding 88.6 hours of the total requested 90.5 hours (inclusive of the time spent on the reply) at $258.46 per hour for attorney work and an additional 1.9 hours of clerical work at a rate of $125 per hour.

## V. Request for Stay

Respondents request that enforcement of any order awarding fees be stayed until the Supreme Court decides *Palacios*. Dkt. No. 41 at 8. However, they provide neither analysis demonstrating that a stay should be granted nor authority supporting their position. *Id.* In light of this lack of any analysis or authority and given binding Ninth Circuit authority that EAJA fees may be awarded to a prevailing petitioner in an immigration habeas proceeding, *see In re Hill*, 775 F.2d at 1040–41, the Court declines Respondents' request to stay enforcement of this Order.

## VI. CONCLUSION

For the foregoing reasons, Petitioners' motion for fees and costs (Dkt. No. 34) is GRANTED, and the Court AWARDS Petitioner $23,137.06 in attorney fees.

Dated this 2nd day of September, 2026.

Tana Lin
United States District Judge